**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

WALTER R. MYERS, et al.,

                    Plaintiffs,

v.                                    CIVIL ACTION NO.   2:19-cv-00757

CITY OF CHARLESTON, et al.,

                    Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendants City of Charleston, Job Ouma, Erick Miller, and Steve Cooper's Motion to Dismiss. (ECF No. 5.)   For the reasons set forth below, Defendants' Motion is **GRANTED**.

*I.    BACKGROUND*

This civil action arises from two incidents requiring law enforcement response from the City of Charleston on September 11 and 12, 2017.   (ECF No. 1-1.)   Plaintiffs filed this action against the City of Charleston, and Officers Job Ouma, Erick Miller, and Chief of Police Steve Cooper individually and in their capacity as police officers and Chief of Police, respectively, for the City of Charleston (collectively, "Defendants").   (*Id.*)   Plaintiffs additionally name 25 "John Does" in the Complaint.   (*Id.*)

The following factual allegations are taken from Plaintiffs' Complaint.[1]   On or about September 11, 2017, Plaintiffs Walter ("Walter") and Vivian ("Vivian") Myers (collectively,

---

[1] Plaintiffs object to the Defendants including two exhibits with their Motion to Dismiss, arguing that it impermissibly introduces additional facts that were not a part of the pleadings.   (ECF No. 6 at 4–5.)   The complained-of exhibits

"Plaintiffs") contacted emergency services through 9-1-1 and requested assistance for their son, Adam Myers ("Adam").   (*Id.* at ¶ 16.)   Adam allegedly suffered from mental illness, including schizoaffective disorder which displays symptoms of schizophrenia and a mood disorder, such as hallucinations, delusions, depression, and mania.   (*Id.* at ¶ 13.)   On September 11, Adam experienced an exacerbation of his symptoms, and Plaintiffs called emergency services requesting to have Adam taken to the hospital for treatment and observation.   (*Id.* at ¶ 16.)   Plaintiffs allege that the responding officers "merely questioned" Adam and determined him to be "competent." (*Id.* at ¶ 17.)   Therefore, the responding officers, identified as "John Does 1–10," refused to take Adam into custody.   (*Id.* at ¶¶ 17–18.)

Plaintiffs then allege that Adam's conditioned worsened through the evening and into the morning of September 12.   (*Id.* at ¶ 19.)   During the early afternoon of September 12, Adam began to physically struggle with his father, Walter Myers, while his mother, Vivian Myers, called emergency services again for assistance.   (*Id.* at ¶ 20.)   Defendants Ouma and Miller responded to the scene at approximately 12:18 P.M. (*Id.* at ¶ 21.)   Plaintiffs assert that Defendants Ouma and Miller found Adam with his back against the wall and arms at his side.   (*Id.* at ¶ 22.)   Plaintiffs further allege that Adam "brandish[ed] no weapon and [made] no threats" to the officers, yet the officers handcuffed Adam and "violently tripped" him.   (*Id.* at ¶¶ 23–25.)   While Adam was prone on the floor, Defendant Ouma placed his "right lower leg into the small of" Adam's back,

---

appear to be an Initial Report, authored by Corporal Erick Miller, and detailing the events of September 12, 2017, and a Supplementary Report of the same events, authored by Officer J. Ouma.   (ECF No. 5-1.)   Rule 12(d) of the Federal Rules of Civil Procedure "does not mandate that a district court treat a motion to dismiss as a motion for summary judgment simply because the moving party includes exhibits with its motion."   *Corbett v. Duerring*, 780 F.Supp2d 486, 492 (S.D. W. Va. 2011) (quoting *Pueschel v. United States*, 369 F.3d 345, 354 n.3 (4th Cir.2004).   Rather, it "only requires that a motion to dismiss be treated as a motion for summary judgment when the motion to dismiss or exhibits present matters outside the nonmoving party's pleadings and the district court does not exclude such matters." *Id.*   In the instant matter, the Court does not consider the attached exhibits, and therefore does not convert Defendants' Motion to Dismiss into a motion for summary judgment.

2

trapping Adam to the floor.   (*Id.* at ¶ 25.)   Adam allegedly began "gasping for breath," while the officers "carried on a conversation."   (*Id.* at ¶ 26.)

Defendants Ouma and Miller than left Adam in a prone position and began speaking with Walter.   (*Id.* at ¶ 28.)   After a "brief conversation," Defendants Ouma and Miller returned to Adam and attempted to get his attention.   (*Id.* at ¶¶ 27–28.)   Adam was unresponsive.   (*Id.* at ¶ 30.)   At that time, Vivian Myers fled the room, and Walter Myers lay "stunned and injured."   (*Id.* at ¶ 31.)   EMT's arrived and transported Adam to the Charleston Area Medical Center, where he was pronounced dead.   (*Id.* at ¶ 34.)

Plaintiffs allege that Vivian was prohibited from remaining in the home and was directed to the Charleston Police Department, where she was subjected to questioning.   (*Id.* at ¶ 35.)   She was not allowed to return home for six (6) hours.   (*Id.*)   Plaintiffs allege that, during the time Vivian was not allowed to return home, Detective W.R. Anderson obtained a search warrant based upon the "malicious wounding" of Walter by Adam.   (*Id.* at ¶ 36.)   Officer A. Kuhner executed this search warrant at approximately 4:30 p.m.   (*Id.* at ¶ 39.)   Plaintiffs finally assert that the execution of this search warrant was an attempt by "the Defendants to obfuscate the circumstances surrounding Adam Myers' death at the hands of agents, servants, employees and/or law enforcement officers."   (*Id.* at ¶ 40.)

Plaintiffs filed their Complaint in the Circuit Court of Kanawha County, West Virginia, on September 11, 2019, asserting fourteen (14) counts.[2]   Count I is asserted under 42 U.S.C. § 1983 and against Defendants Ouma, Miller, and John Does 1–10 for (a) unreasonable search and seizure; (b) deprivation of life or liberty without due process of law; (c) excessive force; (d) equal

---

[2] Only Counts VII, IX, X, and XII appear to be asserted by all Plaintiffs.   The remaining Counts are all asserted by Walter Myers as a representative, on behalf of the estate of Adam Myers.

protection; (e) interference with the "zone of privacy, as protected by the Fourth and Ninth Amendments;" and (f) malicious prosecution.   (*Id.* at ¶¶ 43–44.)   Count II is asserted under 42 U.S.C. § 1983 and against Defendants the City of Charleston, Cooper, and John Does 11–25 for "approv[ing], ratif[ying], condon[ing] [*sic*] encourage[ing]and/or tacitly authoriz[ing]" the (a) unreasonable search and seizure; (b) deprivation of life or liberty without due process of law; (c) excessive force; (d) equal protection; (e) interference with the "zone of privacy, as protected by the Fourth and Ninth Amendments;" and (f) malicious prosecution, as described in Count I.   (*Id.* at ¶¶ 45–51.)   Count III is asserted against Defendants the City of Charleston, Cooper, and John Does 11–25 for "a custom, policy or repeated practice of condoning and/and [*sic*] tacitly encouraging the abuse of police authority, and disregard for the constitutional rights of citizens" and for "municipal customs and/or policies of deliberate indifference in the training, supervision and/or discipline of" Charleston's police officers, again leading to the alleged violations described in Count I.   (*Id.* at ¶¶ 52–59.)   Count IV is asserted against all Defendants for violations under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132.   (*Id.* at ¶¶ 60–64.)   Count V is asserted against Defendants Ouma, Miller, and the City of Charleston for the use of excessive force in violation of Article III, § 6 of the West Virginia Constitution.   (*Id.* at ¶¶ 65–69.)   Count VI is asserted against Ouma, Miller, and the City of Charleston for common law assault and battery.   (*Id.* at ¶¶ 70–74.)   Count VII is asserted against Defendants Ouma, Miller, and the City of Charleston for common law intentional infliction of emotional distress.   (*Id.* at ¶¶ 75–79.)   Count VIII is asserted against Defendants Ouma, Miller, and the City of Charleston for "conduct excepted from immunity pursuant to WV Code §29-12A-5(b)."   (*Id.* at ¶¶ 80–83.)   Count IX is asserted against Defendants Ouma, Miller, and the City of Charleston for negligence.   (*Id.* at ¶¶ 84–88.)

Count X is asserted against Defendants Ouma, Miller, and the City of Charleston for the negligent infliction of emotional distress.   (*Id.* at ¶¶ 89–94.)   Count XI is asserted against Defendants the City of Charleston, Cooper, and John Does 11–25 for negligent training, supervision, and retention.   (*Id.* at ¶¶ 95–103.)   Count XII is asserted against Defendants the City of Charleston, Cooper, and John Does 11–25 for common law negligent training and supervision.   (*Id.* at ¶¶ 104–110.)   Count XIII is asserted against Defendants the City of Charleston and Cooper for "vicarious liability."   (*Id.* at ¶¶ 111–114.)   Finally, Count XIV is asserted against all Defendants for "violation of policy."   (*Id.* at ¶¶ 115–120.)

This case was removed to this Court on October 18, 2019.   (ECF No.1.)   On November 4, 2019, Defendants moved to dismiss all counts except for Counts I(a), I(b), I(c), and X.   (ECF No. 5.)   Plaintiffs filed their response on November 18, (ECF No. 8), and Defendants filed their reply on November 25.   (ECF No. 9.)   As such, this motion is fully briefed and ripe for adjudication.

## II.    *LEGAL STANDARD*

A pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015) (stating that this requirement exists "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To withstand a motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must plead enough facts "to state a claim to relief that is plausible on its face." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has

facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Stated another way, the factual allegations in the complaint "must be sufficient 'to raise a right to relief above the speculative level.'" *Woods v. City of Greensboro*, 855 F.3d 639, 647 (4th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555). Well-pleaded factual allegations are required; labels, conclusions, and a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) ("Bare legal conclusions 'are not entitled to the assumption of truth' and are insufficient to state a claim." (quoting *Iqbal*, 556 U.S. at 679)).

In evaluating the sufficiency of a complaint, this Court first "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. This Court then "assume[s] the[ ] veracity" of the complaint's "well-pleaded factual allegations" and "determine[s] whether they plausibly give rise to an entitlement to relief." *Id.* Review of the complaint is "a context-specific task that requires [this Court] to draw on its judicial experience and common sense." *Id.* "[T]o satisfy the plausibility standard, a plaintiff is not required to plead factual allegations in great detail, but the allegations must contain sufficient factual heft to allow a court, drawing on judicial experience and common sense, to infer more than the mere possibility of that which is alleged." *Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447, 452 (4th Cir. 2017) (internal quotation marks omitted).

## III.   DISCUSSION

Defendants seek the dismissal of all Plaintiffs' claims, except for Counts I(a), I(b), and I(c), and X to the extent that the Plaintiffs bring it for themselves, individually, and not on behalf of the

estate of Adam Myers.   (ECF No. 5.)   Given the multitude of claims, the Court will address each

in turn, beginning with Count I and its discrete subparts.

   A. *Count I(d) – Equal Protection*

   Defendants argue that Count I(d), wherein Plaintiffs allege a violation of equal protection,

fails because Plaintiffs have failed to plead any set of facts that would entitle them to a claim of

relief.   (ECF No. 6 at 6.)   Specifically, Defendants argue that Plaintiffs have failed to allege how

the Defendants treated Adam "differently from anyone, similarly situated or otherwise, because of

some class membership or attribute."   (*Id.*)   Therefore, they argue, Count I(d) fails to state a claim

and should be dismissed.

   Plaintiffs counter that Defendants are in fact arguing that a § 1983 claim requires a

heightened pleading standard, something which is not required to state a § 1983 claim.   (ECF No.

6 at 6.)   Plaintiffs further argue that they have alleged that Adam was not "afforded the provisions

of W.Va. Code §§ 27-5-1, et seq., as customarily would occur."   (*Id.* at 6–7.)   Therefore,

Plaintiffs argue that they have alleged sufficient facts such that the Complaint plausibly states a

claim for a violation of equal protection under the law.   (*Id.* at 7.)

   The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall

. . . deny to any person within its jurisdiction the equal protection of the laws."   U.S. Const. amend.

XIV, § 1.   The Equal Protection Clause does not prohibit the states from making classifications,

but instead "keeps governmental decisionmakers from treating differently persons who are in all

relevant aspects alike."   *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001) (quoting

*Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)).   To succeed on an equal protection claim, a plaintiff

must "demonstrate that he has been treated differently from others with whom he is similarly

situated and that the unequal treatment was the result of intentional or purposeful discrimination."

*Id.; see also Veney v. Wyche*, 293 F.3d 726, 730–31 (4th Cir. 2002); *Delgado v. Ballard*, Civ. Action No. 2:09-1252, 2012 WL 456937 at *8 (S.D. W. Va. Feb. 10, 2012).   The Supreme Court of the United States expounded upon the meaning of purposeful discrimination:

> "Discriminatory purpose," however, implies more than intent as volition or intent as awareness of consequences.   It implies that the decisionmaker, . . . , selected or reaffirmed a particular course of action at least in part "because of," not merely "in spite of," its adverse effects upon an identifiable group.

*Personnel Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979) (internal citations omitted).   Plaintiffs must plead sufficient facts to satisfy each requirement of an equal protection claim.   *Veney*, 293 F.3d at 731.

Plaintiffs claim fails in that regard.   Plaintiffs, at best, have alleged that Adam was mentally ill, (ECF No. 1-1 at ¶ 13), and that the Defendants did not afford Adam the procedure established in W. Va. Code §§ 27-5-1, *et seq*.   (*Id.* at ¶ 17.)   What Plaintiffs have failed to allege, however, is that the denial of these procedures was the result of intentional or purposeful discrimination.   *See Thorne v. Huntington Police Dept.*, Civ. Action. No. 3:12-6280, 2013 WL 2458544 at *3 (S.D. W. Va. June 6, 2013).   First, Plaintiffs make no allegations concerning other similarly-situated individuals and how Adam was treated differently from them.   Next, Plaintiff have failed to allege any fact that this Court could reasonably infer was the product of intentional or purposeful discrimination.   In fact, there are no allegations in the pleadings that would allow this Court to infer that the Defendants' actions were even partly influenced by discriminatory purpose.   Even accepting Plaintiffs allegations as true and drawing all inferences in their favor, this Court concludes that Plaintiffs have failed to state a § 1983 claim based on equal protection and **DISMISSES** Count I(d) with prejudice.

B. *Count I(e) – Zone of Privacy*

Defendants next argue for the dismissal of Count I(e), which alleges a violation of Adam's "right to be free from interference with the zone of privacy, as protected by the Fourth and Ninth Amendments."   (*See* ECF No. 6 at 6.)   Defendants argue that Plaintiffs have failed to make any allegations that the right to a "zone of privacy" was violated, but more importantly, that this claim is not recognized under the Constitution.   (*Id.* at 6, n.30.)   Finally, Defendants argue that the zone-of-privacy claim is subsumed within their excessive force claim. (*Id.*)

Plaintiffs, meanwhile, counter that while their zone-of-privacy claim is a "part of Plaintiffs' claim involving excessive force," it also stands as an "additional ground for a Fourth Amendment violation."   (ECF No. 8 at 7.)   Plaintiffs also assert that they have satisfied the notice pleading standard of Rule 8 of the Federal Rules of Civil Procedure such that this claim is not subject to dismissal.   (*Id.* at 7–8.)

The Constitution of the United States does not explicitly mention a fundamental right to privacy, nor does the Constitution create a general constitutional right to privacy.   *See Blackston v. Vogrin*, Civ. Action No. 2:10-cv-14, 2010 WL 1253895 at *2 (N.D. W. Va. Mar. 24, 2010), *aff'd* 2010 WL 1740714 (N.D. W. Va. Apr. 29, 2010) (citing *Katz v. United States*, 389 U.S. 347 (1967)).   Instead, the Supreme Court of the United States has found a right to privacy embedded within various constitutional amendments.   *Id.*; *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (freedom from unreasonable governmental intrusion under Fourteenth Amendment); *Griswold v. Connecticut*, 381 U.S. 479, 484, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) (recognizing "zones of privacy" found in the First, Third, Fourth, Fifth and Ninth Amendments, but no general right to privacy)).

9

As Defendants argue, whether a plaintiff has a general constitutional right to be free from "interference with the zone of privacy, as protected by the Fourth and Ninth Amendments," (*see* ECF No. 1-1 at ¶ 43(e)), is debatable, at best.   However, the Court need not reach this analysis at the dismissal stage.   Plaintiffs have failed to plead sufficient facts to support the zone-of-privacy claim upon which the Court can grant relief.   While Plaintiffs assert they have satisfied the "notice pleading" requirement within Rule 8 of the Federal Rules of Civil Procedure, Plaintiffs have not satisfied the pleading requirements set forth by the Supreme Court in *Twombly* and *Iqbal*.   As described above, a complaint must plead enough facts "to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678.   Plaintiffs' Complaint sets out no facts from which this Court can reasonably infer that Defendants interfered with a "zone of privacy."   At best, Plaintiffs allege that the search warrant obtained by Detective W.R. Anderson and executed by Officer A. Kuhner "was an effort . . . to obfuscate the circumstances surrounding Adam Myers' death[.]"   (ECF No. 1-1 at ¶¶ 37–40.)   Yet, Plaintiffs do not allege facts that would ultimately lead to this inference, and so it remains a bare legal conclusion that is not entitled to the assumption of truth.   *See Iqbal*, 556 U.S. at 679.

Furthermore, Plaintiffs' readily admit that "this zone of privacy is part of Plaintiff's claim involving excessive force."   (ECF No. 8 at 7.)   This argument, then, would be subsumed within the excessive force claim.   *See, e.g.*, *IDC v. City of Vallejo*, Civ. Action No. 2:13-cv-1987 DAD, 2014 WL 2567185 at *5, n.3 (E.D. Cal. June 6, 2014).   Even accepting Plaintiffs allegations as true and drawing all inferences in their favor, this Court concludes that Plaintiffs have failed to state a § 1983 claim based on the Defendants' interference with a zone of privacy and **DISMISSES** Count I(e) with prejudice.

C. *Count I(f) – Malicious Prosecution*

Defendants next argue for the dismissal of Count I(f) because Adam Myers was never prosecuted, and therefore cannot claim to be maliciously prosecuted. (ECF No. 6 at 7.) Furthermore, Defendants argue that no arrest warrant was ever obtained, or even sought, for any person at the Plaintiffs' residence. (*Id.*) Therefore, Defendants state that Plaintiffs' claim for malicious prosecution fails to state a claim.

Plaintiffs appear to have abandoned their claim for malicious prosecution as they have failed to address Defendants' argument in its response brief. *See Brevard v. Racing Corp. of West Virginia*, Civ. Action No. 2:19-cv-578, 2020 WL 1860713 at *8 (S.D. W. Va. Apr. 13, 2020); *Taylor v. Clay Cty. Sheriff's Dep't*, No. 2:19-cv-00387, 2020 WL 890247, at *2 (S.D. W. Va. Feb. 24, 2020) (finding the plaintiff abandoned their claims because they failed to address the defendants' arguments); *Blankenship v. Necco, LLC*, No. 2:16-cv-12082, 2018 WL 3581092, at *9 (S.D. W. Va. July 25, 2018) ("The failure to respond to arguments raised in a motion . . . can indicate that the non-moving party concedes the point or abandons the claim."). Nonetheless, even if Plaintiffs had responded, it would be to no benefit.

To begin, the Fourth Circuit has recognized that "there is no such thing as a '§ 1983 malicious prosecution' claim." *Lambert v. Williams*, 223 F.3d 257, 262 (4th Cir. 2000). Rather, the appropriate § 1983 claim in this context is "a claim founded on a Fourth Amendment seizure that incorporates elements of the analogous common law tort of malicious prosecution—specifically, the requirement that the prior proceeding terminate favorably to the plaintiff." *Id.* (citing *Brooks v. City of Winston Salem*, 85 F.3d 178, 183 (4th Cir.1996)). A prima facie case of common law malicious prosecution requires "(1) the initiation or maintenance of a proceeding

against the plaintiff by the defendant; (2) termination of that proceeding favorable to the plaintiff; (3) lack of probable cause to support that proceeding; and (4) the defendant's malice." *Id.* at 260.

Plaintiffs fail to state a claim in this regard.   The Court need not address all the remaining factors, as Plaintiffs fail to allege the most critical: That a proceeding was initiated or maintained against them.   Therefore, for the reasons articulated above, this Court concludes that Plaintiffs have failed to state a § 1983 claim based on malicious prosecution and **DISMISSES** Count I(f) with prejudice.

D. *Count II – Supervisory Liability*

Defendants argue that Plaintiffs have also failed to satisfy the pleading requirements of a claim of supervisory liability under § 1983 because they have failed to identify any facts in the Complaint that would satisfy the elements of the claim.   (ECF No. 6 at 7–8.)   Rather, the Defendants assert that the Plaintiffs have attempted to gloss over the pleading requirement by alleging they are "informed and believe" the necessary facts exist.   (*See* ECF No. 9 at 3.)   As such, Defendants assert that Count II, in its entirety, is subject to dismissal.

Plaintiffs counter again that they have satisfied the "notice pleading requirements" set forth in Rule 8 of the Federal Rules of Civil Procedure.   (ECF No. 8 at 8.)   Furthermore, Plaintiffs assert that they "have more than adequately met their burden" of pleading under the Supreme Court's decisions in *Twombly* and *Iqbal*.   (*Id.* at 9.)   As such, Plaintiffs assert that Count II is not subject to dismissal.

Three elements are necessary to establish supervisory liability:

(1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit

12

authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

The first element requires a showing by the plaintiff that "(1) the supervisor's knowledge of (2) conduct engaged in by a subordinate (3) where the conduct poses a pervasive and unreasonable risk of constitutional injury to the plaintiff." *Id.* To show that conduct "poses a pervasive and unreasonable risk of constitutional injury" requires evidence that the conduct is "widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury." *Id.*

The second element, deliberate indifference or tacit authorization, is established "by demonstrating a supervisor's 'continued inaction in the face of documented widespread abuses.'" *Id.* Here, the plaintiff "assumes a 'heavy burden of proof' because the plaintiff 'cannot satisfy his burden [] by pointing to a single incident or isolated incidents.'" *Young v. Muncy*, Civ. Action No. 2:19-cv-00829, 2020 WL 1521799 at *5 (S.D. W. Va. Mar. 30, 2020) (quoting *Shaw*, 13 F.3d at 799).

Finally, the third element can be established "when the plaintiff demonstrates an 'affirmative causal link' between the supervisor's inaction and the harm suffered by the plaintiff." *Shaw*, 13 F.3d at 799 (citations omitted). Causation under this element encompasses both cause in fact and proximate cause. *Id.*

Here, Plaintiffs have failed to plead sufficient facts to establish supervisory liability against the City of Charleston, Defendant Cooper, and John Does 11–25. Plaintiffs only make a conclusory allegation that "high ranking City of Charleston officials, including Chief Cooper, high

13

ranking police supervisors, JOHN DOES [sic] 11 through 25, and/or each of them, knew and/or reasonably should have known about the repeated acts of misconduct[.]"   (*See* ECF No. 1-1 at ¶ 46.)   Plaintiffs have failed to allege specific facts, however, that the City, Cooper, or John Does 11–25 had knowledge of "repeated acts of misconduct" by Defendants Miller, Ouma, and the remaining John Does.   Even further, Plaintiffs have not plead specific facts that Defendants Ouma, Miller, John Does 1 through 10, or anyone, were engaged in acts of misconduct that were "widespread, or at least had been used on several occasions."   *See Young*, 2020 WL 1521799 at *5 (quoting *Shaw*, 13 F.3d at 799).   Nor have Plaintiffs identified what policies and procedures were violated such that it would pose a pervasive and unreasonable risk of constitutional injury to citizens.   As *Twombly* and *Iqbal* have instructed, conclusory allegations will not suffice.

For these reasons, Plaintiffs have failed to allege sufficient facts to sustain a § 1983 claim based on supervisory liability.   Therefore, the Court **DISMISSES** Count II with prejudice.

E. *Count III – Monell Claim*

Defendants characterize Count III as a *Monell* claim and argue that Plaintiffs have the "same problem in Count III that they have in Count II."   (ECF No. 6 at 8.)   Defendants assert that Plaintiff have failed to identify any facts that would support a *Monell* claim.   (*Id.* at 9.) Defendants agree with Plaintiffs that "if Count II fails, so does Count III."   (ECF No. 9 at 3.)

Plaintiffs do not dispute the Defendants' characterization of their claim.   (ECF No. 8 at 10.)   Plaintiffs further rest on the argument they asserted for Count II, namely, that they have satisfied the requirements of notice pleading.   (*Id.*)

First, a municipality may be liable under § 1983 if the municipality itself subjects an individual to a deprivation of rights or causes an individual to be subjected to such deprivation.

14

*Connick v. Thompson*, 563 U.S. 51, 59 (2011) (citing *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 692 (1978)).   Under § 1983, municipalities are responsible only for "their own illegal acts."   *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986) (citing *Monell*, 436 U.S. at 665–83).   Municipalities are not vicariously liable for their employees' actions under § 1983. *Monell*, 436 U.S. at 691.

Thus, to prove a § 1983 claim against a municipality, a plaintiff must prove that the action that caused their injury was "pursuant to official municipal policy."   *Id.* at 691, 694.   A plaintiff asserting a § 1983 claim against a municipality, then, must plead "(1) the existence of an official policy or custom; (2) that the policy or custom is fairly attributable to the municipality; and (3) that the policy or custom proximately caused the deprivation of a constitutional right."   *Poe v. Town of Gilbert, West Virginia*, Civ. Action No. 2:11-cv-00645, 2012 WL 3853200 at * 4 (S.D. W. Va. Sep. 5, 2012) (quoting *Alexander v. City of Greensboro*, 762 F.Supp.2d 764, 781 (M.D.N.C. 2011).

*Poe* instructs how a policy or custom may become attributable to a municipality:

A policy or custom for which a municipality may be held liable can arise in four ways: (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that manifests deliberate indifference to the rights of citizens; or (4) through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law.

*Id.* (quoting *Alexander*, 762 F.Supp.2d at 781).   *See also Jordan ex. rel Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir.1994).

A policy or custom may be shown by persistent practices, "continued inaction in the face of a known history of widespread constitutional deprivations," or from the propensity of a known course of employee conduct.   *See Milligan v. City of Newport News*, 743 F.3d 227, 229–30 (4th

15

Cir. 1984).  Despite the numerous ways a policy or custom may be shown, a policy or custom "will not be inferred merely from municipal inaction in the face of isolated constitutional deprivations by municipal employees."  *Id.* at 230.

Here, Plaintiffs have failed to satisfy *Twombly* and *Iqbal's* pleading standards for Count III.  Count III fails for the same reason as Count II: Plaintiffs have merely given "[t]hreadbare recitals of the elements of a cause of action, supported by conclusory statements[.]"  *See Iqbal*, 556 U.S. at 678.  These conclusory statements will not suffice.  As in Count II, Plaintiffs have not pled any facts from which may be inferred any official municipal policy or custom that would support a claim for municipality liability under § 1983.  Plaintiffs must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable" and must demonstrate "more than a sheer possibility that a defendant has acted unlawfully."  *Id.* at 678.  Simply, Plaintiffs' assertions that they are "informed and believe" are not sufficient for this Court to draw a reasonable inference that the Defendants are liable under § 1983.

For these reasons, Plaintiffs have failed to allege sufficient facts to sustain a § 1983 claim based on municipal liability.   Therefore, the Court **DISMISSES** Count III with prejudice.

*F.  Count IV – Americans with Disabilities Act*

Defendants next argue that Plaintiffs have again failed to allege certain specific facts necessary to establish a claim of discrimination under the ADA.  (ECF No. 6 at 10.)  Plaintiffs counter that they sufficiently plead that Adam Myers was "discriminated against because of his disability" and denied "the benefit of the right to be involuntarily committed."  (ECF No. 8 at 10–11.)

16

Among other things, the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."   42 U.S.C. § 12132.   In general, a plaintiff seeking recovery under this provision must allege that "(1) [he] has a disability, (2) [he] is otherwise qualified to receive the benefits of a public service, program, or activity, and (3) [he] was excluded from participation in or denied the benefits of such service, program, or activity, or otherwise discriminated against, on the basis of h[is] disability."   *Constantine v. Rectors and Visitors of George Mason Univ.*, 411 F.3d 474, 498 (4th Cir. 2005).

Defendants do not dispute the sufficiency of Plaintiffs' allegations for the first two elements, but rather contend that the Plaintiffs have failed to allege sufficient facts to establish that Adam Myers was excluded from participation in or denied the benefits of being involuntarily committed on the basis of his disability.   (ECF No. 6 at 10.)   This Court agrees.   A plaintiff seeking relief under this provision of the ADA "must prove that disability 'played a motivating role' in the adverse action." *Constantine*, 411 F.3d at 498 n. 17 (quoting *Baird ex rel. Baird v. Rose*, 192 F.3d 462, 470 (4th Cir. 1999)).

Here, Plaintiffs have not alleged sufficient facts to permit the reasonable inference that Adam's disability played a motivating role in him not being involuntarily hospitalized under W. Va. Code § 27-5-2.   The Complaint utterly lacks allegations that the Defendants were motivated, in any part, by Adam Myers's disability.   Instead, Plaintiffs again have relied on a bare conclusory statement: "The exclusion, denial of benefits and/or discrimination against Adam Myers was by reason of Adam Myers' recognized disability."   (ECF No. 1-1 at ¶ 64.)   As stated above, these

conclusory statements are not afforded the assumption of truth and are otherwise insufficient to state a claim.

Plaintiffs apparently argue that because Adam Myers was "well-known to the Police Department to be mentally ill" on account of previous responses to the Plaintiffs' residence that this amounts to discrimination because of his disability.   (*See* ECF No. 8 at 10.)   What Plaintiffs fail to allege, however, are facts that show how Adam's disability played a motivating role in the Defendants' alleged denial of the involuntary hospitalization.   As such, the factual allegations in the Complaint are insufficient to raise the possibility of relief on this claim above a speculative level.   Therefore, the Court **DISMISSES** Count IV with prejudice.

### G. Count V – State Law Excessive Force

For Count V, Defendants argue that Plaintiff's cause of action based on a state law excessive force claim does not survive Adam's death under West Virginia Code Section 55-7-8a(a).   (ECF No. 8 at 11.)   Plaintiffs respond that a § 1983 claim survives Adam's death because the "federal remedy under § 1983 was supplementary to state remedy, and survival of § 1983 claim was needed to protect the federally created rights."   (ECF No. 8 at 11.)   Plaintiffs assert that West Virginia's wrongful death statute serves as an appropriate "gap-filler" with which a § 1983 claim could survive.   (*Id.*)

But Plaintiffs have brought neither a § 1983 nor a West Virginia statutory wrongful death claim within Count V of their Complaint.   Count V is titled "Excessive Force – Violation of West Virginia Constitution" and is brought against Defendants Ouma, Miller, and the City of Charleston.   (ECF No. 1-1 at 16.)   Plaintiffs identify this claim as a "constitutional tort action," and state that it is brought pursuant to West Virginia common law "separate and apart from any

18

violation of 42 U.S.C. § 1983 alleged as aforesaid."   (*Id.* at ¶ 66.)   Specifically, Plaintiffs allege

that the named Defendants "violated the constitutional rights guaranteed to Adam Meyers under

Article III, Section 6 of the West Virginia Constitution."[3]   (*Id.* at ¶ 67.)   With this framework of

Count V in mind, the Court begins its analysis.

West Virginia Code § 55-7-8a(a) states,

> In addition to the causes of action which survive at common law, causes of action
> for injuries to property, real or personal, or injuries to the person and *not resulting
> in death*, or for deceit or fraud, also shall survive; and such actions may be brought
> notwithstanding the death of the person entitled to recover or the death of the person
> liable.

(emphasis added).   Section 55-7-8a of the West Virginia Code effectively modified the common

law rule which resulted in the abatement of an injured party's claims upon the injured party's

death.   *See Hoover v. Trent*, Civ. Action No. 1:07-CV-47, 2008 WL 2992987 at *3 (N.D. W. Va.

Aug. 1, 2008); *see also Jones v. George*, 533 F.Supp. 1293, 1301 (S.D. W. Va. 1982) ("A wronged

plaintiff took with him to the grave his unfiled claim for damages for purely personal torts, such

as false arrest, defamation, assault, etc.").   Thus, this modification of the common law "only

allows for survival of personal injuries that do not result in death."[4]   *Hoover*, 2008 WL 2992987

at *3.

---

[3] Article III, Section 6 of the West Virginia Constitution states that

> [t]he rights of the citizens to be secure in their houses, persons, papers and effects, against
> unreasonable searches and seizures, shall not be violated. No warrant shall issue except upon
> probable cause, supported by oath or affirmation, particularly describing the place to be searched,
> or the person or thing to be seized.

In most cases, the protections offered by Article III, Section 6 are coextensive with those protections offered by the
Fourth Amendment of the United States Constitution.   *See State v. Clark*, 232 W. Va. 480, 494, 752 S.E.2d 907, 920
(2013).

[4] "Actions resulting in death are covered by our wrongful death statute, W.Va.Code, 55–7–5 (1931). See also
W.Va.Code, 55–7–8 (1989); W.Va.Code, 55–7–8a(b) through –8a(d)."   *Courtney v. Courtney*, 190 W. Va. 126, 128
n.5, 437 S.E.2d 436, 438 n.5 (1993).

"The Supreme Court of Appeals of West Virginia has noted that the 'broad terminology' of the survival statute provides relatively little guidance concerning the 'types of causes of action [that] will survive.'"   *Finney v. MIG Capital Mgmt., Inc.*, Civ. Action No. 2:13-cv-2778, 2014 WL 1276159 at *5 (S.D. W. Va. Mar. 27, 2014) (quoting *Stanley v. Sewell Coal Co.*, 169 W.Va. 72, 285 S.E.2d 679, 683 (1981)).   Generally, however, survival statutes such as § 55-7-8a are to be "liberally construed," given their remedial nature.   *Triplett v. Mirandy*, Civ. Action No. 3:13-cv-135, 2015 WL 2170033 at *4 (N.D. W. Va. May 8, 2015).   Thus, in analyzing whether a particular claim survives under this statute, "[the Court] must of necessity apply the general terms to the particular case."   *Stanley*, 169 W. Va. at 77, 285 S.E.2d at 683.

In addition to the above analysis, the Supreme Court of Appeals of West Virginia has held that "the (state) Legislature intended to exclude from statutory survivability . . . such personal torts as defamation, false arrest and imprisonment, and malicious prosecution." *Cavendish v. Moffitt*, 163 W. Va. 38, 39–40, 253 S.E.2d 558, 559 (1979).   *See also Jones*, 533 F.Supp. at 1301 ("Thus, no provision of W. Va. Code § 55-7-8a(a) allows the survival of claims of false arrest, false imprisonment, medical malpractice or neglect herein.").   The Supreme Court of the United States, in examining survivability statutes, has also reasoned that, "[t]he goal of compensating those injured by a deprivation of rights provides no basis for requiring compensation of one who is merely suing as the executor of the deceased's estate."   *Id.* (quoting *Robertson v. Wegmann*, 436 U.S. 584, 592 (1978)).   Therefore, Section 55-7-8a(a) will only effect survival if "one, the death of the injured person occurs prior to the institution of the suit, and two, his or her death is from causes unrelated to the suit's complaints."   *Jones*, 533 F. Supp. at 1301.

20

Here, Plaintiffs' claim abates under the plain language of the statute. As Plaintiffs identified, Count V represents a "constitutional tort action" alleging excessive force. State-law excessive force claims are "analogous to claims for assault or battery." *See Ray v. Cutlip*, Civ. Action No. 2:13-cv-75, 2014 WL 858736 at *2 (N.D. W. Va. Mar. 5, 2014) (citing *Wilson v. Isaacs*, 929 N.E.2d 200, 203 (Ind.2010)). Assault or battery claims do not survive under W. Va. Code § 55-7-8a(a). *Spry v. West Virginia*, No. 2:16-CV-01785, 2017 WL 1483370, at *9 (S.D. W. Va. Apr. 24, 2017); *Hoover*, 2008 WL 2992987, at *5.

Plaintiffs' argument that a state law wrongful death action can supplement a federal claim that would otherwise expire under this provision is undoubtedly correct, but has no application to this specific claim.[5] By their own words, Plaintiffs state that this state-law-based constitutional tort cause of action is brought "separate and apart from any violation of 42 U.S.C. § 1983 alleged[.]" (ECF No. 1-1 at ¶ 66.) Plaintiffs further connect the actions of the Defendants to Adam's death. (*See, e.g.*, *id.* at ¶ 67 ("As a proximate result of the action of the defendants . . . Adam Myers suffered pain and suffering, both physical and mental, and was killed.").) This allegation alone—injuries to the person resulting in death—results in the state-law excessive force claim abating.

Therefore, because the Plaintiffs' state-law excessive force claim does not survive Adam's death, the Court **DISMISSES** Count V with prejudice as to all Defendants.

---

[5] Federal law does not address the survivability of claims brought pursuant to 42 U.S.C. § 1983, so § 1988 instructs courts to turn to the applicable state law addressing survivability. *See Hoover*, 2008 WL 2992987 at *3. Under West Virginia's survivability statute, claims involving injuries that result in death do not survive. *Id.* However, as *Hoover* explains, a § 1983 claim advanced under a wrongful death theory does survive. *Id.*

H.  *Count VI – Assault and Battery*

Defendants next argue that Plaintiffs' assault and battery claim, Count VI, also does not survive under West Virginia's survivability statute, but that even if it did, it cannot be asserted against the City of Charleston because the West Virginia Governmental Tort Claims and Insurance Reform Act ("WVGTCIRA") immunizes political subdivisions from intentional torts.  (ECF No. 6 at 11.)  Plaintiffs respond that the Complaint "provides sufficient grounds to lay a foundation that the premise is the discriminatory conduct of Defendants."  (ECF No. 8 at 12.)  Plaintiffs cite *Waller v. City of Danville*, 212 Fed.Appx. 162 (4th Cir. 2006) to support the notion that allegations premised on discrimination survive the pleading stage.[6]

Plaintiffs' claim fails because the claim of assault and battery does not survive Adam's death, as detailed more fully above.  *See Spry*, 2017 WL 1483370, at *9; *Hoover*, 2008 WL 2992987, at *5.  However, even if the assault and battery claim did survive, the claim could not be asserted against the City of Charleston because of the grant of immunity provided to it by the WVGTCIRA.

---

[6] Plaintiffs rely on *Waller v. City of Danville*, 212 Fed.Appx. 162 (4th Cir. 2006) for the proposition that, because they assert their claims of discrimination are sufficiently pled, they are entitled to engage in discovery "to reveal . . . the premise of their allegations."  (ECF No. 8 at 12.)  Plaintiffs' reliance on *Waller*, however, is misplaced.  In *Waller*, the plaintiff brought an assortment of federal constitutional claims and state law claims against the defendants, following the shooting death of an individual during an arrest.  *Id.*  At the outset of the case, the district court ordered the limitation of discovery to the issue of qualified immunity.  *Id.* at 167.  Then, later, the court granted summary judgment to the defendants on all claims asserting excessive force and unlawful arrest, which then led to the dismissal of all other claims, despite no further discovery taking place.  *Id.* at 168.  On appeal, the Fourth Circuit upheld the dismissal of the federal claims.  *Id.* at 174.  However, to the extent the state-law claims were based on an ill-defined "discrimination" claim, the Fourth Circuit remanded to the district court for further delineation, and discovery, if needed, as the plaintiff had been denied that opportunity previously.  *Id.* at 173–74 ("The precise nature of the discrimination claim is not clear to us, . . . .  However, plaintiff has also been prohibited from conducting discovery into her allegations of disability discrimination[.]").  Notably, *Waller* was decided before the Supreme Court of the United States issued its decision in *Twombly* and *Iqbal*, but the plaintiff had satisfied the prior pleading standards.  And, as already discussed by this Court, under the *Twombly* and *Iqbal* pleading standards, Plaintiffs' discrimination claim fails.

The WVGTCIRA provides that,

> [e]xcept as provided in subsection (c) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function: Provided, That this article shall not restrict the availability of mandamus, injunction, prohibition, and other extraordinary remedies.

W. Va. Code § 29-12A-4(b)(1).[7]   The statute goes on to list five circumstances when a political subdivision may be found liable in a civil action, all involving negligence or when liability is expressly imposed by the West Virginia Code.   *See* W. Va. Code § 29-12A-4(c)(1)–(5).

The Supreme Court of Appeals of West Virginia has interpreted § 29-12A-4(b)(1) to mean that "claims of intentional and malicious acts are included in the general grant of immunity in W. Va. Code, 29-12A-5."   *Zirkle v. Elkins Road Public Serv. Dist.*, 221 W. Va. 409, 414, 655 S.E.2d 155, 160 (2007).   Only the claims of negligence contained within W. Va. Code § 29-12A-4(c) fall outside this general grant of immunity.   *Zirkle*, 221 W. Va. At 414, 655 S.E.2d at 160.   Assault and battery, conversely, are intentional torts.   *See Tofi v. Napier*, Civ. Action No. 2:10-cv-1121, 2011 WL 3862118 at *3 (Aug. 31, 2011) ("Counts three, four, and five respectively allege assault, battery, and outrage—all of which are intentional torts."); *West Virginia Fire & Cas. Co. v. Stanley*, 216   W. Va. 40, 49, 602 S.E.2d 483, 492 (2004) (assault and intentional infliction of emotional distress); *Flowers v. Max Specialty Ins. Co.*, 234 W. Va. 1, 11, 761 S.E.2d 787, 797 (2014) (recognizing that "assault and battery are intentional torts").

---

[7] The WVGTCIRA defines a "political subdivision" as "any county commission, municipality and county board of education; . . . ."   W. Va. Code § 29-12A-3(c).   A "municipality" is further defined by the Act as "any incorporated city, town or village and all institutions, agencies or instrumentalities of a municipality."   W. Va. Code § 29-12A-3(b).   The parties do not dispute that the City of Charleston is a municipality under the WVGTCIRA.

Here, the Plaintiffs have asserted an intentional tort cause of action—assault and battery—against a political subdivision.   By the plain language of the WVGTCIRA, the City of Charleston is immune from liability for intentional torts.   However, because the claim does not survive Adam Myers's death as more fully explained above, the claim is **DISMISSED** with prejudice as to all Defendants.

### I.   Count VII – Intentional Infliction of Emotional Distress

Next, Defendants argue that Plaintiffs' intentional infliction of emotional distress claim similarly does not survive under West Virginia's survivability statute, but that even if it did, it cannot be asserted against the City of Charleston because the WVGTCIRA immunizes political subdivisions from intentional torts.   (ECF No. 6 at 11.)   Plaintiffs respond by adopting their response to Count VI.   (ECF No. 8 at 12.)

Again, Plaintiffs' claim, to the extent it is asserted by the estate of Adam Myers, must be dismissed because it does not survive Adam's death.   W. Va. Code § 55-7-8a(a).   But even if it did, the claim would be subject to dismissal against the City of Charleston due to the immunity grant provided by the WVGTCIRA.   W. Va. Code § 29-12A-4(b)(1).   Therefore, Plaintiffs' claim of intentional infliction of emotional distress, insofar as it is asserted by the estate of Adam Myers, is **DISMISSED** with prejudice as to all Defendants.   Plaintiffs Walter and Vivian Myers's claim of intentional infliction of emotional distress is **DISMISSED** with prejudice as to the City of Charleston.

### J.   Count VIII – Conduct Excepted from Immunity

Defendants argue that, in addition to the survivability statute and the WVGTCIRA, Count VIII fails because it does not set forth an actual cause of action.   (ECF No. 6 at 12.)   Rather,

24

Defendants claim that Plaintiffs attempt to set out claim pursuant to § 29-12A-5(b)(2) "in an obvious attempt to strip Officer Ouma and Corporal Miller of the WVGTCIRA immunity." (*Id.*)

The Court agrees. West Virginia Code § 29-12A-5 establishes when a political subdivision or an employee of a political subdivision is immune from liability. It does not operate to form a private cause of action. Instead, it establishes an immunity defense to the types of claims brought by Plaintiffs. *See, e.g.*, *Hutchison v. City of Huntington*, 198 W. Va. 139, 148, 479 S.E.2d 649, 658 (1996) ("The very heart of the immunity defense is that it spares the defendant from having to go forward with an inquiry into the merits of the case.")

Plaintiffs have failed to state a claim upon which relief may be granted. Count VIII is **DISMISSED** with prejudice.

### K. Count IX - Negligence

Defendants next argue that Count IX, which asserts a common-law negligence claim, does not survive Adam's death under West Virginia Code § 55-7-8a(a), to the extent it is brought on behalf of the estate of Adam Myers. (ECF No. 6 at 11.) Plaintiffs again apparently rely on *Waller v. City of Danville*, 212 Fed.Appx. 162 (4th Cir. 2006) to support the notion that allegations premised on discrimination survive the pleading stage. (ECF No. 8 at 12.)

As this Court has already discussed, because Count IX alleges injuries to Adam that resulted in his death, Plaintiffs' state-law negligence claim does not survive Adam's death, insofar as it is asserted on behalf of Adam's estate. *See* Part III.G, *supra*. Moreover, Plaintiffs' reliance on *Waller* is misplaced. *See* Part III.H, n.6, *supra*. Therefore, Plaintiffs' claim of negligence, insofar as it is asserted by the estate of Adam Myers, is **DISMISSED** with prejudice as to all Defendants.

L. *Count X – Negligent Infliction of Emotional Distress*

Defendants again assert that, to the extent Plaintiffs' claim of negligent infliction of emotional distress is asserted on behalf of the estate of Adam Myers, Count X does not survive because of West Virginia's survivability statute.   (ECF No. 6 at 11.)   Plaintiffs again rely on *Waller v. City of Danville* to support the notion that allegations premised on discrimination survive the pleading stage.   (ECF No. 8 at 12.)

Plaintiffs' counterargument has no bearing on whether the claim itself, as asserted by the estate of Adam Myers, survives.   Because the actions complained of resulted in injuries that in turn resulted in Adam's death, Plaintiffs' claim fails because it does not survive W. Va. Code § 55-7-8a(a) to the extent it is asserted on behalf of the estate of Adam Myers.   Therefore, Plaintiffs' claim of negligent infliction of emotional distress, insofar as it is asserted by the estate of Adam Myers, is **DISMISSED** with prejudice as to all Defendants.

M. *Count XI – Negligent Training, Supervision and/or Retention*

Defendants next argue that Count XI, titled as "Negligent Training, Supervision and/or Retention," is subject to dismissal because it is a "vaguely-described mashup" of claims such that it fails to put Defendants' on notice of the claims against them.   (ECF No. 6 at 13.)   Defendants assert that the claim as "being predicated entirely on the histrionic over-alleging of sources of law and states of *mens rea*," such that the claim is "hopelessly vague."[8]   (*Id.*)   Plaintiffs respond that their pleading is "clear" that they are asserting a common-law claim of negligent training and

---

[8] Defendants also argue that the claim, as asserted on behalf of the estate of Adam Myers, does not survive West Virginia's survivability statute, W. Va. Code § 55-7-8a(a).   (ECF No. 6 at 13.)   However, because the Court finds that Plaintiffs have failed to meet the pleading requirements of *Twomby* and *Iqbal*, the Court does not reach the issue of survivability as to the estate of Adam Myers's claim of negligent training.

supervision, and that their claim is asserted with "sufficient specificity" to put Defendants on notice of its claim.   (ECF No. 8 at 13–14.)

Plaintiffs' Complaint alleges that Adam Myers was "deprived of rights and privileges secured to him by the United States Constitution and by other laws of the United States,"   due to the City of Charleston's failure to properly train officers "in violation of 42 U.S.C. § 1983 and related provisions of federal law and in violation of the above cited constitutional provisions." (ECF No. 1-1 at ¶ 97.)   Plaintiffs then allege that the City of Charleston failed to train its officers to properly "deal[] with mentally ill individuals under the Fourteenth Amendment, the Rehabilitation Act of 1973, 29 U.S.C.C. [*sic*] § 794 and the Americans with Disabilities Act, 42 U.S.C.S. [*sic*] § 12101 et seq."   (*Id.* at ¶ 98.)   The Plaintiffs then allege that this failure is actionable under "42 U.S.C. § 1983, the West Virginia Constitution and West Virginia statutory and common law."   (*Id.* at ¶ 99.)   Finally, the Plaintiffs allege that the City of Charleston acted with "deliberate, callous, and conscious indifference[.]"   (*Id.* at ¶ 103.)

In *Lane v. Fayette County Commission*, Judge Copenhaver explained that establishing a state-law claim for negligent training and supervision is different than that of 42 U.S.C. § 1983 claim.   Civ. Action No. 2:18-cv-1223, 2019 WL 4780815 at *5 (S.D. W. Va. Sep. 30, 2019). Rather than showing "deliberate indifference" or a widespread custom or policy, the plaintiff must show that "the employer was on notice of the employee's propensity (creating a duty), yet unreasonably failed to take action (manifesting a breach), resulting in harm to a third-party from the employee's tortious conduct."   *Id.* (quoting *S.R. v. Fayette Cty. Bd. of Educ.*, Civ. Action No. 2:15-cv-13466, 2016 WL 6886868 at *6 (S.D. W. Va. Nov. 21, 2016).

Here, despite Plaintiffs' insistence that they have satisfied the notice pleading standards, Plaintiffs have failed to allege specific facts that would show the City of Charleston or any of its supervisors would be on notice of any employee's propensity for misconduct.   Even accepting all Plaintiffs' allegations as true, Plaintiffs only state that they are "informed and believe and thereon allege" that these individuals knew of repeated acts by employees, but fail to identify what those acts are.   (*See* ECF No. 1-1 at ¶¶ 46, 47.)   Furthermore, Plaintiffs have failed to allege what duty existed or how that duty was breached by the Defendants.   *See Lane*, 2019 WL 6886868 at *6. Plaintiffs have not alleged whether the officers had prior complaints against them for excessive force or for failing to "properly deal" with others with mental illness, whether the City of Charleston was aware of abusive conduct or excessive force by the officers, how the City of Charleston and its supervisors handled prior complaints against these officers, or the type of training the officers received.   *See id.   Cf.   Gaylord v. City of Beckley*, No. 5:18-CV-00177, 2018 WL 3581093, at *5 (S.D. W. Va. July 25, 2018) (allowing claim to proceed where plaintiff "allege[d] that officers routinely charge people with obstruction without probable cause, particularly when the officers engaged in other misconduct"); *Smith v. Popish*, No. 5:17-CV-129, 2017 WL 4401633, at *6 (N.D. W. Va. Oct. 2, 2017) (denying motion to dismiss where plaintiff alleged city was aware defendant "ha[d] prior claims against him for excessive force ... but allowed him to continue as a police officer without providing proper supervision or re-training").   Instead, Plaintiffs have simply alleged legal conclusions, while asserting a deprivation of rights under the entire body of West Virginia law and several significant portions of federal law.   Simply, Plaintiffs' claim falls significantly short of the standard required by *Twombly* and *Iqbal*.

28

Therefore, Plaintiffs' claim of negligent training and supervision is **DISMISSED** with prejudice as to all Defendants.

### N.  Count XII – Common Law Negligent Training and Supervision

Defendants argue that Count XII, titled as a common law negligent training and supervision claim, is subject to dismissal to the extent it is asserted by the estate of Adam Myers because the claim does not survive the death of Adam.   (ECF No. 6 at 11.)   Plaintiffs do not appear to dispute this and have not asserted an argument arguing for its survival.   (*See generally* ECF No. 8.)

Plaintiffs appear to have abandoned their claim, to the extent it was asserted on behalf of the estate of Adam Myers, for negligent training and supervision as they have failed to address Defendants' argument in its response brief.   *See Brevard v. Racing Corp. of West Virginia*, Civ. Action No. 2:19-cv-578, 2020 WL 1860713 at *8 (S.D. W. Va. Apr. 13, 2020); *Taylor v. Clay Cty. Sheriff's Dep't*, No. 2:19-cv-00387, 2020 WL 890247, at *2 (S.D. W. Va. Feb. 24, 2020) (finding the plaintiff abandoned their claims because they failed to address the defendants' arguments); *Blankenship v. Necco, LLC*, No. 2:16-cv-12082, 2018 WL 3581092, at *9 (S.D. W. Va. July 25, 2018) ("The failure to respond to arguments raised in a motion ... can indicate that the non-moving party concedes the point or abandons the claim.").

Nonetheless, even if Plaintiffs had responded, it would be to no benefit.   As discussed *supra*, Plaintiffs' claim does not survive the death of Adam Myers because the injuries complained of resulted in Adam's death.   Therefore, Count XII, insofar as it is asserted by the estate of Adam Myers, is **DISMISSED** with prejudice as to all Defendants.

O.  *Count XIII – Vicarious Liability*

Defendants next argue that Count XIII, a claim titled "vicarious liability," fails to state a claim because vicarious liability "is not a cause of action."[9]  (ECF No. 6 at 14.)  Plaintiffs counter that they have "set forth a theory of liability" such that Count XIII is not subject to dismissal. (ECF No. 8 at 14.)

Vicarious liability is not an independent cause of action.  Rather, it is exactly what Plaintiffs identify—a theory of liability—but it cannot stand on its own.  *See, e.g.*, *Penn v. Citizens Telecom Servs. Co., LLC*, 999 F. Supp. 2d 888, 894 (S.D. W. Va. 2014) ("To the extent that Penn has asserted a separate 'state law claim' or 'count' of 'vicarious liability', however, the Court observes that vicarious liability is a theory of liability by which Penn may seek to hold Citizens Telecom liable for the actions of its employee, Kidder. It is not a separate cause of action. *See McCullough v. Liberty Heights Health & Rehab. Ctr.*, 830 F. Supp. 2d 94, 97 (D. Md. 2011) ('Vicarious liability is, of course, not an independent cause of action, but rather a theory of assigning liability.'").") (citation omitted); *accord McIntosh v. Clark Cty. Sch. Dist.*, No. 2:17-CV-00490, 2017 WL 3996399, at *4 (D. Nev. Sept. 11, 2017) ("Vicarious liability is not a cause of action; it is a theory applied to a negligence cause of action to hold an employer liable for its employees' negligence.  So 'vicarious liability' cannot stand as an independent claim for relief."); *Dennis v. Collins*, No. 15-CV-2410, 2016 WL 6637973, at *5 (W.D. La. Nov. 9, 2016); *Banks v. Soc'y of St. Vincent De Paul*, 143 F. Supp. 3d 1097, 1104 (W.D. Wash. 2015); *Bond v. Rexel, Inc.*, No. 5:09-CV-122, 2011 WL 1578502, at *9 (W.D.N.C. Apr. 26, 2011); *In re S.*

---

[9] Defendants also argue that the claim, as asserted on behalf of the estate of Adam Myers, does not survive West Virginia's survivability statute, W. Va. Code § 55-7-8a(a).  (ECF No. 6 at 13.)  However, because "vicarious liability" is itself not an independent cause of action, the Court does not address this argument.

*African Apartheid Litig.*, 617 F. Supp. 2d 228, 301 (S.D.N.Y. 2009); *Bonner v. Alderson*, No. 02-CV-248, 2005 WL 2333829, at \*19 (D. Idaho Sept. 22, 2005).   Vicarious liability is not a claim on which relief can be granted, but is instead a theory of liability under which a proper claim could be asserted.

Therefore, Plaintiffs' claim of vicarious liability is **DISMISSED** with prejudice as to all Defendants.

P.  *Count XIV – Violation of City Policy*

Defendants argue for the dismissal of Plaintiffs' claim for violation of city policy because an agency's internal policies, and the subsequent violation thereof, do not create a cause of action.[10]  (ECF No. 6 at 15.)   Plaintiffs assert that they have set forth a "theory of liability" and that, under the notice pleading requirements, this claim is not subject to dismissal.   (ECF No. 8 at 14.)

The violation of an agency's internal rules or policies does not give rise to an independent cause of action.   Simply, the violation of an agency's internal policies, with nothing more, is not a legally recognizable claim.    *See, e.g.*, *Decker v. Target Corp.*, No. 1:16-CV-00171, 2018 WL 4956641, at \*2   (D. Utah Oct. 12, 2018) ("What is more, just as internal policies do not establish the legal duty, a violation of those policies does not 'necessarily establish a breach of duty.'"); *Doe 20 v. Bd. of Educ. of Cmty. Unit Sch. Dist. No. 5*, 680 F. Supp. 2d 957, 992   (C.D. Ill. 2010) (recognizing that "internal policies do not create legal duty where law does not impose duty"); *Harris v. Commerce   City*, No. 09-CV-01728, 2010 WL 3307465, at \*4 n.7 (D. Colo. Aug. 18,

---

[10] Defendants again argue that the claim, as asserted on behalf of the estate of Adam Myers, does not survive West Virginia's survivability statute, W. Va. Code § 55-7-8a(a).  (ECF No. 6 at 13.)   However, because "violation of policy" is itself not an independent cause of action, the Court does not address this argument.

2010) ("In any event, the provisions of the Commerce City Police Manual cited by Mr. Harris reference internal police department policies.   Breach of these duties might give rise to internal punishment by police supervisors, but the mere fact that internal policies exist does not suffice to convert those policies into legally-recognized duties that may be enforced by citizens through tort law."); *cf. Goodrich v. Newport News Sch. Bd.*, 743 F.2d 225, 227 (4th Cir. 1984) ("a claim that an agency's policies or regulations have not been adhered to does not sustain an action for redress of procedural due process violations");   *Harper v.Blagg*, No. 2:13-CV-19796, 2015 WL 6509131, at *8 (S.D. W. Va. Oct. 28, 2015) (recognizing that violation of internal policy directives does not per se establish a constitutional violation); *Evans v. Chalmers*, 703 F.3d 636, 667 (4th Cir. 2012) (Wilkinson, J., concurring) (noting that "a mere deviation from departmental policy, by itself, does not plausibly suggest [that the defendants] acted 'wantonly'"); *Dalrymple v. United States*, 460 F.3d 1318, 1327 (11th Cir. 2006) ("Violating an internal policy or procedure does not create a cause of action under the FTCA against the government unless the challenged conduct is independently tortious under applicable state law."); *Hovater v. Robinson*, 1 F.3d 1063, 1068 (10th Cir. 1993) ("However, a failure to adhere to administrative regulations does not equate to a constitutional violation.").   Because the violation of an agency's internal policies is not a cognizable claim, Plaintiffs have failed to state a claim upon which relief can be granted.

Therefore, Plaintiffs' claim of violation of policies is **DISMISSED** with prejudice as to all Defendants.

*Q. Damages*

As a final note, Defendants also moved for the dismissal of any "cause of action" for damages.   (ECF No. 6 at 16.)   Plaintiffs responded that the damages clauses included in the

Complaint were not independent causes of action, but rather a delineation of the damages prayed for in the Complaint.   (ECF No. 8 at 14.)   With the parties in agreement that the damages do not set forth independent causes of action, the Court has nothing to decide.

*IV.    CONCLUSION*

For the reasons discussed above, the Court **GRANTS** Defendants' Motion to Dismiss. (ECF No. 28.)

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:      July 21, 2020

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE

33